394 S.E.2d 897

**Mark McINTYRE and Sharon McIntyre**

v.

**Martha K. ZARA.**

**No. 19271.**

Supreme Court of Appeals of
West Virginia.

June 26, 1990.

Jacques R. Williams, Edward R. Kohout, Hamstead, Hamstead & Williams, Morgantown, for Martha K. Zara.

William L. Frame, Wilson, Frame & Metheney, Morgantown, for Mark McIntyre, Sharon McIntyre.

PER CURIAM:

Martha K. Zara appeals from a summary judgment granted in favor of Mark and Sharon McIntyre, holding the property purchased by the McIntyres from Mrs. Zara was not subject to two restrictive covenants thereby allowing the McIntyres to subdivide their property and to use a contractor of their choice. On appeal Mrs. Zara contends that summary judgment should not have been granted because there is a genuine issue of fact concerning the parties' intent to be bound by the restrictive covenants. Because a genuine issue of fact concerning intent of the parties exists, we hold that summary judgment should not have been granted.

According to the parties' agreed statement of facts, by deed dated June 6, 1986, Mrs. Zara, now deceased, conveyed to Mr. and Mrs. McIntyre a lot consisting of approximately 1.497 acres for the sum of Fifteen Thousand Dollars ($15,000). The 1.497 acre lot is part of a 29.87 acre tract of land that Fred Zara, the successor in interest to Mrs. Zara, is developing as the "Skyline Estates" subdivision. At the time of the sale, no restrictions, protective covenants or reservations for the land were recorded. However, the deed included a declaration that the land would be subject to future restrictions.[1] The McIntyres contend that Mrs. Zara orally agreed to allow them to subdivide their lot into 3 lots of

---

1. The deed contains the following pertinent language:

By acceptance of this deed, the Grantees specifically agree and consent to conform to any and all future declarations of restrictions, protective covenants and reservations pertaining to a sub-division which may be developed from real estate presently belonging to the Grantor, and which is adjacent to the property herein conveyed. The Grantees, and their successors, shall have all rights and privileges of membership in the future Property Owner's Association for such sub-division, and shall comply with all restrictions, covenants, and reservations pertaining to such sub-division and pertaining to membership in such future Property Owner's Association.

approximately a half acre each and to employ a contractor of their choice. Mr. Zara denies that any such agreement was reached because as developer, Mrs. Zara would have additional expenses for the subdivided lots' utility service. On April 27, 1987, in the office of the Clerk of Monongalia County, a declaration of various restrictions, covenants and reservations pertaining to the proposed subdivision was recorded.[2]

The McIntyres instituted this action because although they are willing to adhere to most restrictions contained in the recorded declaration, they want to subdivide their lot and to use a contractor of their choice. Both the McIntyres and Mr. Zara filed motions for summary judgment and submitted an agreed statement of facts. Although the circuit court found that there was substantial doubt as to the parties' intent concerning the restrictive covenants, the court granted summary judgment to the McIntyres allowing them to use a contractor of their choice and to subdivide their lot, provided they paid for the additional utility costs. On appeal Mr. Zara contents that summary judgment should not have been granted because a genuine issue of material fact exists, namely, the intent of the parties regarding the restrictive covenants. Because we agree that a genuine issue of material fact exists, we hold that summary judgment should not have been granted.

I

Both parties moved for summary judgment on different grounds. The McIntyres argue that summary judgment should be affirmed because the restrictions contained in the declaration, recorded after their land purchase, do not affect their property because *W. Va. Code*, 36–1–1 [1931], the Statute of Frauds, makes them unenforceable. *W. Va. Code*, 36–1–1 [1931], provides that no "estate of inheritance or freehold ... shall

be created or conveyed except by deed or will." Negative easements or restrictions are subject to *W. Va. Code*, 36–1–1 [1931]. *Bennett v. Charles Corp.*, 159 W.Va. 705, 713–14, 226 S.E.2d 559, 564 (1976) (because the Bennetts' deed contained no restrictions, we refused "to sanction the substitution of verbal declarations for written instruments in the creation and transfer of estates in land").

■ In the present case, although the declaration was recorded after the McIntyres' deed, the deed not only refers to the future covenants but specifically notes that the McIntyres agreed to conform "to any and all future declarations of restrictions, protective covenants and reservations pertaining to a sub-division which may be developed." The reference to the restrictive covenants in the McIntyres' deed is sufficient to satisfy the requirements of *W. Va. Code*, 36–1–1 [1931].

■ Having determined that the recorded restrictions are not barred as a matter of law by *W. Va. Code*, 36–1–1 [1931], we next examine the record to determine if these restrictions were intended by the parties to apply to the McIntyres' land. In Syllabus Point 2, *Allemong v. Frendzel*, 178 W.Va. 601, 363 S.E.2d 487 (1987), we held:

"The fundamental rule in construing covenants and restrictive agreements is that the intention of the parties governs. That intention is gathered from the entire instrument by which the restriction is created, the surrounding circumstances and the objects which the covenant is designed to accomplish." *Wallace v. St. Clair*, 147 W.Va. 377, 390, 127 S.E.2d 742, 751 (1962).

■ The McIntyres contend that at closing Mrs. Zara told them that they could subdivide their lot and use a contractor of their choice. Mr. Zara denies any such

2. The disputed restrictions are contained in paragraphs M and P of the declaration. Paragraph M of the declaration provides:
   No numbered lot may be subdivided without the written consent of the Declarant or the "Building Control Committee."
Paragraph P of the declaration provides:

All home construction, excavation, additions, and/or remodeling within the boundaries of Skyline Estates Subdivision will be performed by Skyline Contracting at a fair market rate unless approval is granted in writing by Skyline Contracting to allow others to perform a specific project.

agreement was reached and notes that subdividing the lot would have increased the development costs because of the additional utilities. The McIntyres's deed does not reflect the alleged agreement, but in fact states the McIntyres accept all future restrictions. The agreed statement of facts states the parties differ concerning the alleged agreement. The dispute concerning the parties' intention regarding the application of these two restrictions is a genuine issue of material fact.

■ In *Aetna Casualty and Surety Co. v. Federal Insurance Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963), our landmark case on summary judgment, we stated in syllabus point 3:

> A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.

Syllabus Point 1, *Dawson v. Woodson*, 180 W.Va. 307, 376 S.E.2d 321 (1988). Summary judgment should not have been granted to the McIntyres because there is no evidence documenting the alleged agreement. The only evidence of record, the deed, indicates the McIntyres agreed to all future restrictive covenants. In examining summary judgments, we review the facts of the case in the light most favorable to the party against whom judgment was rendered. Syllabus Point 1, *Jividen v. Legg*, 161 W.Va. 769, 245 S.E.2d 835 (1978); *Eagle Manufacturing Co. v. Ashland Oil, Inc.*, 180 W.Va. 53, 375 S.E.2d 417 (1988); *Lowery v. Raptis*, 174 W.Va. 736, 329 S.E.2d 102 (1985); *Board of Education of Ohio County v. Van Buren and Firestone, Architects*, 165 W.Va. 140, 267 S.E.2d 440 (1980).

■ On remand the circuit court should allow the parties to present evidence concerning their intentions and the alleged agreement regarding the restrictive covenants. We note that Mrs. Zara is deceased and, therefore, certain testimony may be excluded by *W.Va.Code*, 57-3-1 [1937], the Dead Man's statute. *See Moore v. Goode*, 180 W.Va. 78, 375 S.E.2d 549, 560–61 (1988) (summarizing the three general conditions that must be met to bar a witness's testimony). If the circuit court determines that the parties' intentions with regard to the restrictive covenants are so material that it affects the substance of the contract, the circuit court should order rescission, an extraordinary remedy. *See Morrison v. Waggy*, 43 W.Va. 405, 27 S.E. 314 (1897); *Fearon Lumber and Veneer Co. v. Wilson*, 51 W.Va. 30, 41 S.E. 137 (1902) (rescission appropriate remedy when substance of the contract affected); *Boyd v. Pancake Realty Co.*, 131 W.Va. 150, 46 S.E.2d 633 (1948) (upholding rescission based on a mutual mistake concerning an easement). If the circuit court orders rescission, it should return the parties as closely as possible to their pre-contract positions by rescinding the deed, returning the purchase price, awarding interest on the purchase price and awarding costs plus interest for any improvements made to the land.[3]

■ Assuming that the circuit court determines that the parties intended the restrictions and that rescission is not required, then the court should examine the disputed restrictions to determine if they are reasonable. Our case law indicates that although the general rule favors the unrestricted use of property, restrictive covenants, if reasonable, are generally upheld. *Wallace v. St. Clair*, 147 W.Va. 377, 127 S.E.2d 742 (1962); *Ballard v. Kitchen*, 128 W.Va. 276, 36 S.E.2d 390 (1945); *Neekamp v. Huntington Chamber of Commerce*, 99 W.Va. 388, 129 S.E. 314 (1925); *Deutsch v. Mortgage Securities Co.*, 96 W.Va. 676, 123 S.E. 793 (1924). A restrictive covenant is determined to be reasonable if it is "not contrary to public policy, not in restraint of trade, and not for the purpose of creating a monopoly." *Wallace supra* 147 W.Va. at 387, 127 S.E.2d at 750 (quoting 14 Am.Jur., Covenants, Conditions and Restrictions, § 206, at 616). If the language of the covenant is ambiguous even when read in light of the context and surrounding circumstances, it should be construed against the grantor or persons seeking to enforce the restriction. *Id.;*

---

**3.** The McIntyres' brief indicates that construction of a house was started on the land.

*Deutsch supra* 96 W.Va. at 681–82, 123 S.E. at 795; *United Fuel Gas Co. v. Morley Oil & Gas Co.,* 102 W.Va. 374, 376, 135 S.E. 399 (1926).

In the present case, the McIntyres object to two specific covenants, the prohibitions against subdividing and using a contractor other than Skyline Contracting. This Court has long upheld restrictive covenants that assist in the development of a residential area, a "lawful and laudable" purpose, "[i]f the restrictions are reasonable in nature and purpose...." *Wallace supra* 147 W.Va. at 389, 127 S.E.2d at 751 (holding that keeping eight roomers violated the restrictive covenant limiting each lot to a single dwelling). We have long upheld building restrictions because the restrictions both burden and benefit the land. In *Allemong supra* 178 W.Va. at 604–605, 363 S.E.2d at 490, we upheld a restrictive covenant prohibiting the sale of alcoholic beverages because the covenant was "to protect and preserve the quality of the neighborhood." *See Allred v. City of Huntington,* 172 W.Va. 204, 304 S.E.2d 358 (1983) (upholding restrictive covenants concerning set-back lines); *Wallace supra; Ballard supra; Wolfe v. Landers,* 124 W.Va. 290, 20 S.E.2d 124 (1942) (upholding restrictive covenant requiring the building to cost at least $3,500). The record indicates that the purpose of the declaration is to establish a residential area. The circuit court should examine the disputed restrictions to determine if, within the framework of the declaration, the disputed restrictions are reasonably designed to reach the acknowledged purpose and are no broader than necessary to accomplish that purpose.[4]

For the above stated reasons, the judgment of the Circuit Court of Monongalia County is, therefore, reversed, and the case is remanded for further development consistent with this opinion.

Reversed and Remanded.

---

**4.** We note that the declaration states that, "All lots ... are designed for single family dwellings only." The declaration also sets up a building control committee to review plans of proposed construction.