452 S.E.2d 83

**Nile K. ARMSTRONG, Edwina L. Armstrong, Frank H. Price and E. Garnet Price, Plaintiffs Below, Appellees,**

v.

**Eugene A. STRIBLING and Linda L. Stribling, Defendants Below, Appellants.**

**No. 22020.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 20, 1994.

Decided Dec. 8, 1994.

---

John S. Bailey, Jr., Ellen L. Medaglio, Bowles Rice McDavid Graff & Love, Parkersburg, for appellants.

Cynthia A. Stanton, E. Scott Stanton, Summersville, for appellees.

PER CURIAM:

This is an appeal from an order entered in the Circuit Court of Wood County, in which the trial court denied the appellants' motion for a new trial, finding the land owned by the appellants to be part of a certain subdivision and, therefore, subject to certain restrictive covenants. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons stated below, the judgment of the circuit court is affirmed.

I

In the 1970s, Clifford and Peggy Coffman owned and developed Hy View Terrace Subdivision in Wood County, West Virginia. Two plats depicting Hy View Terrace, surveyed and prepared by surveyor Paul Mar-shall, were filed with the Wood County Planning Commission. One plat contained forty-five lots and the other contained eleven lots. A third map, which was not filed with the planning commission but which was used to entice prospective purchasers of land within the subdivision, contained forty-five lots, including a recreation area and indications of future development. Only the eleven-lot plat [1] was approved and placed on record [2] in the office of the Clerk of the County Commission of Wood County.

Recorded with the eleven-lot plat were ten restrictive covenants, one of which prohibits the construction of more than one dwelling on any lot.[3] The Coffmans subsequently began conveying lots in and around the area depicted as Hy View Terrace.

In 1977, the Coffmans conveyed their remaining interest in Hy View Terrace to Carl A. Crooks and Barbara J. Crooks. The deed conveying the land to the Crooks contained the following reference to restrictive covenants:

This conveyance is made subject to those certain restrictive covenants and conditions more particularly set forth on the Plat of Hy View Terrace Subdivision recorded in said Clerk's Office in Plat Book No. 15 at page 47, and to all easements, rights of way and reservations that now appear of record affecting said premises.

The Crooks subsequently defaulted on their deed of trust and the property passed to the Community Bank of Parkersburg. By deed dated June 21, 1989, the bank conveyed approximately thirty-two and one-half acres to Eugene and Linda Stribling (hereinafter "appellants"). The deed conveying this land to the appellants contained the restrictive covenants set forth on the plat of Hy View Terrace. However, the appellants later obtained a "Surrender and Release" of all rights and reservations held by the Coffmans and the bank, the former deedholders of the land now owned by the appellants. The appellants, who wish to build a four-unit apart-

1. The eleven-lot plat reads "Plan of Hy View Subdivision Section 'A'."

2. The eleven-lot plat was recorded in Plat Book No. 15 at page 47.

3. Restrictive covenant number two provides: "Lots shown shall be used for residential purposes only and only one dwelling shall be erected on any lot. No lot can be further subdivided."

ment building on their land, in violation of the restrictive covenant described above, filed a complaint to cancel and terminate the restrictive covenants as a cloud on their title. According to the appellees, Hy View Terrace landowners Nile K. Armstrong, Edwina L. Armstrong, Frank H. Price and E. Garnet Price, none of the landowners in Hy View Terrace[4] was served with the appellants' complaint nor given notice of the hearing.

By order of July 24, 1992, the Honorable Arthur Gustke[5] determined that the restrictive covenants contained in the appellants' deed were void as to the appellants' land. Accordingly, the appellants began construction of the aforementioned apartment building the following September.

The appellees, as landowners in Hy View Terrace, subsequently sought to enjoin the construction of the apartment building, as such construction violated the restrictive covenants denoted on the recorded eleven-lot plat and to which the appellants' deed refers. On December 3, 1992, a hearing was held on the appellees' petition for injunction. Kenneth Mills, a Hy View Terrace landowner, testified that, prior to purchasing his land in 1975, developer Peggy Coffman showed him a plat containing forty-five lots.[6] Mr. Mills testified that the land purchased by the appellants was depicted on this forty-five lot plat as a "recreation area."

The trial court determined that the forty-five lot plat to which Mr. Mills referred, though not placed on file, was, nevertheless, used to sell land within Hy View Terrace. The trial court specifically found that the restrictive covenants were intended to apply not just to the eleven lots contained in the recorded plat, but to all of the property originally owned by the developers, Mr. and Mrs. Coffman. The trial court issued a permanent injunction enforcing the restrictive covenants on the appellants' land and enjoin-ing further construction of buildings not in compliance therewith.

On January 29, 1993, the appellants moved for a new trial, pursuant to Rule 59 of the *West Virginia Rules of Civil Procedure.* In support of their motion for a new trial, the appellants submitted an affidavit of developer Peggy Coffman, in which she states:

> At no time during the period which they owned said tracts of land did they intend, plan or represent to anyone that any part of said land, other than the lands contained within [the recorded eleven-lot plat] were to be encompassed or contained within Hy–View Terrace or subject to the restrictive covenants adopted by Coffman for Hy–View Terrace Addition.

Mrs. Coffman further stated that she had never before seen the forty-five lot plat which Mr. Mills testified was used to induce him into purchasing land in Hy View Terrace. Mrs. Coffman acknowledged that the deed conveyed to the Crooks, a predecessor in the appellants' chain of title, did state that the conveyance was subject to the restrictive covenants contained in the recorded eleven-lot plat, but explained that the inclusion of that provision in the deed was "an error on the part of the scrivener of said deed" and that she did not intend for the deed to contain any such provision.

By order of May 5, 1993, the trial court denied the appellants' motion for a new trial. It is from that ruling the appellants now appeal.

## II

█ The appellants contend that neither the recorded eleven-lot plat of Hy View Terrace nor the affidavit of developer Peggy Coffman evidences an intent to include the appellants' property within the subdivision and subject to the restrictive covenants. We disagree. A review of the record and appli-

---

**4.** According to appellee, Mr. Armstrong, there are currently thirty homes in Hy View Terrace.

**5.** Apparently, the Honorable George W. Hill, Jr. was originally assigned this civil action. It is unclear as to why the appellants sought relief from Judge Gustke. The appellees point out that there is no indication in the record that the appellants ever indicated to Judge Gustke that their property was located in Hy View Terrace Subdivision or that the road privately maintained by the Hy View Terrace Homeowners Association was their only access to their property.

**6.** A copy of this forty-five lot plat was admitted into evidence over the appellants' objection and is the subject of the appellants' *second assignment of error.*

cable case law reveals that the trial court properly determined that the developers intended the appellants' property to be part of Hy View Terrace and, thus, subject to the restrictive covenants.

■ This Court has previously stated that, when construing restrictive covenants, it is the original intention of the parties that controls. In the syllabus of *Jubb v. Letterle*, 191 W.Va. 395, 446 S.E.2d 182 (1994), we explained:

'" 'The fundamental rule in construing covenants and restrictive agreements is that the intention of the parties governs. That intention is gathered from the entire instrument by which the restriction is created, the surrounding circumstances and the objects which the covenant is designed to accomplish.' *Wallace v. St. Clair*, 147 W.Va. 377, 390, 127 S.E.2d 742, 751 (1962)." Syl. pt. 2, *Allemong v. Frendzel*, [178] W.Va. [601], 363 S.E.2d 487 (1987).' Syl. pt. 3, *Jubb v. Letterle*, 185 W.Va. 239, 406 S.E.2d 465 (1991).

*See also* syllabus, *Teays Farms Owners Ass'n v. Cottrill*, 188 W.Va. 555, 425 S.E.2d 231 (1992).

It is clear from the facts in this case that the developers of the subdivision, Mr. and Mrs. Coffman, intended that the restrictive covenants apply to the appellants' property. The deed by which the appellants took title to their land explicitly states that the appellants' property was to be subject to the restrictive covenants filed with the eleven-lot plat recorded in the Wood County clerk's office. The Coffmans conveyed several lots *other than* the eleven depicted in the recorded plat which also specifically refer to the restrictive covenants that apply to Hy View Terrace. For instance, the deed which conveyed "Lot 13 of Hy–View Terrace Addition" to witness Kenneth Mills specifically refers to the restrictive covenants filed with the eleven-lot plat. The map attached to the Mills' deed is different than the recorded eleven-lot plat. Similarly, the Coffmans conveyed Lot 15 of Hy View Terrace, Section B,[7]

to William D. Allman and Kathryn S. Allman, in 1973. Like the Mills' property, the Allman property was subject to the restrictive covenants even though it was not one of the eleven lots contained in the recorded plat.

Furthermore, we find it significant that access to Hy View Terrace can only be achieved by use of one road, which is *privately* maintained by the homeowners' association of Hy View Terrace. Each subdivision homeowner pays a monthly fee to cover the costs of caring for and maintaining the road. Though this road is the only means by which the appellants can reach their property, they pay nothing towards the upkeep of the road for the obvious reason that they claim not to be a "homeowner" in Hy View Terrace.

■ As mentioned above, Hy View Terrace currently contains thirty homes, the deeds to which specifically refer to the restrictive covenants discussed herein. These homes were built in compliance with the restrictive covenants. As we stated in syllabus point 1 of *Jubb v. Letterle*, 185 W.Va. 239, 406 S.E.2d 465 (1991):

'Where the owner of land divides it into lots in pursuance of a general plan for the development of an exclusively residential area and conveys the several lots to different grantees by deeds containing identical or substantially similar covenants restricting the use of the lots to residential purposes, an action in the nature of a suit in equity may be maintained by an owner of one of such lots against the owner or owners of any other lot to compel compliance with the restriction.' Syl. Pt. 1, *Wallace v. St. Clair*, 147 W.Va. 377, 127 S.E.2d 742 (1962).

The evidence supports the trial court's finding that the developers intended that appellants' property be part of Hy View Terrace. Accordingly, the appellants' property is subject to the restrictive covenants to which their deed explicitly refers.

7. As we noted earlier, the recorded eleven-lot plat is denoted as "Section A" of Hy View Terrace, suggesting that the developers intended future development of the subdivision. The deed

to the Allmans, conveying a lot in "Section B" of Hy View Terrace, strongly supports the appellees argument that, from its inception, Hy View was intended to be larger than eleven lots.

### III

■ The appellants also contend that the forty-five lot plat about which Kenneth Mills testified was not properly authenticated and was, thus, improperly admitted into evidence.[8] The appellants argue that, because Mr. Mills was neither the surveyor who prepared the plat nor the developer of the subdivision, he was not the proper person to authenticate it.

■ *W.Va.R.Evid.* 901(b)(1) states: "(b) Illustration. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule: (1) Testimony of Witness with Knowledge. Testimony that a matter is what it is claimed to be." Mr. Mills identified this forty-five lot plat as that which was shown to him by developer Peggy Coffman as Hy View Terrace. The trial court, over the appellants' objection, determined that Mr. Mills had sufficient knowledge of the plat and could, thus, authenticate it as such. In determining whether a trial court has properly admitted a piece of evidence, this Court has previously held:

'"Rulings on the admissibility of evidence are largely within a trial court's

sound discretion and should not be disturbed unless there has been an abuse of discretion." *State v. Louk,* [171] W.Va. [639], 301 S.E.2d 596, 599 (1983).' Syllabus Point 2, *State v. Peyatt,* 173 W.Va. 317, 315 S.E.2d 574 (1983).

Syl. pt. 7, *State v. Miller,* 175 W.Va. 616, 336 S.E.2d 910 (1985). We cannot say that the trial court abused its discretion in determining that the forty-five lot plat was properly authenticated by Mr. Mills and, subsequently, admitting it into evidence.

For the reasons stated herein, the judgment of the Circuit Court of Wood County is affirmed.

Affirmed.

BROTHERTON, C.J., did not participate.

MILLER, Retired J., sitting by temporary assignment.

---

8. We note that, at the hearing on the appellees' petition for injunction, held on December 3, 1992, Mr. Mills referred to a copy of the forty-five lot plat used to induce him to purchase property in Hy View Terrace because the original could not be located. Following the granting of the petition for appeal to this Court, however, the original plat was located and admitted into the record by order of this Court.